NOT RECOMMENDED FOR PUBLICATION
File Name: 18a0401n.06

No. 17-6139

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| TOBIN SEGRIST; AMY SEGRIST, | ) | |
| | ) | **FILED** |
| Plaintiffs-Appellants, | ) | Aug 09, 2018 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | |
| | ) | |
| THE BANK OF NEW YORK MELLON, *formerly known as* The Bank of New York As Trustee For The Certificateholders of the CWABS, Inc. Asset-Backed Certificates Series 2003-2; FULL SPECTRUM LENDING; FRED HOWELL, Individually; DEBBIE HOWELL, Individually; DOES 1–10 INCLUSIVE; BANK OF AMERICA, N.A., | ) ) ) ) ) ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE OPINION |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

BEFORE:    COOK, STRANCH, and NALBANDIAN, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** Plaintiffs Tobin and Amy Segrist bought a home

15 years ago. They took out a mortgage to finance their purchase and, years later, entered into an

agreement with Defendant Bank of America that modified the terms of their mortgage payments

because of financial hardship. When they subsequently defaulted on the modified terms,

Defendant Bank of New York Mellon (BNY) foreclosed. The Segrists filed this suit, alleging that

Defendants violated the Truth in Lending Act (TILA or the Act), 15 U.S.C. § 1601 *et seq.*, had no

lawful interest in the property, and fraudulently induced them to enter into the Loan Modification

Agreement. The district court dismissed all counts and, for the reasons explained below, we **AFFIRM**.

## I.   BACKGROUND

In 2003, the Segrists purchased their home by taking out a mortgage loan with Defendant Full Spectrum Lending. The note was assigned to Countrywide Home Loans and then endorsed in blank. In 2011, the deed of trust was assigned to Defendant BNY.

In April 2013, approximately a decade after originally purchasing their home, the Segrists entered into a Loan Modification Agreement with their loan servicer, Defendant Bank of America. According to the Modification Agreement, the Segrists were experiencing financial hardship and were in or approaching default on the original loan. The Agreement consolidated assorted unpaid fees and costs with the balance of original note, permanently forgave approximately $67,000 of that consolidated amount, and set a new fixed interest rate of 6.125%.

The Segrists allege that, during these transactions, they never received copies of federally mandated disclosures about the terms of their loans. So, just over two years after entering into the Loan Modification Agreement, the Segrists attempted to exercise a right of rescission. They mailed notices to Defendants BNY, Full Spectrum Lending, and Bank of America stating that they "hereby cancel/rescind" both the "original" and the "additional" loans, identified by number. They also filed a Notice of Rescission with the county Register of Deeds.

Around the same time, BNY began the process of foreclosing on the loan. Approximately one month after the Segrists mailed their notices, BNY held a foreclosure sale and purchased the property. BNY then sold the property to Defendants Debbie and Fred Howell.

The Segrists filed this suit, alleging that Defendants' failure to provide them with disclosures mandated by TILA entitled them to rescind the underlying transactions. They also

claim that Defendants did not have the legal interest necessary to modify the terms of the initial loan or to foreclose on their home and that Defendants fraudulently induced them to enter into the modification. The district court granted Defendants' motion to dismiss all three counts, and plaintiffs appealed. The parties' state-court detainer actions have been consolidated and stayed pending the outcome of this litigation.

## II.   ANALYSIS

We review de novo a district court's grant of a motion to dismiss. *Hill v. Snyder*, 878 F.3d 193, 203 (6th Cir. 2017). "To survive a motion to dismiss under Rule 12(b)(6), a complaint must state a claim to relief that rises 'above the speculative level' and is 'plausible on its face.'" *Luis v. Zang*, 833 F.3d 619, 625 (6th Cir. 2016) (quoting *Hensley Mfg., Inc. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009)). In evaluating a complaint's plausibility, we need not accept the truth of legal conclusions or "mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). We must, however, "accept the complaint's well-pleaded factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor." *Luis*, 833 F.3d at 626. In addition to considering the complaint itself, we may consider exhibits attached to the complaint as well as "exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein." *Id.* (quoting *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 774 (6th Cir. 2015)).

### A.      Truth in Lending Act

First, the Segrists claim that they are entitled to rescission due to Defendants' failure to provide the disclosures mandated by TILA.

TILA was enacted "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the

uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). "We have repeatedly stated that TILA is a remedial statute and, therefore, should be given a broad, liberal construction in favor of the consumer." *Begala v. PNC Bank, N.A.*, 163 F.3d 948, 950 (6th Cir. 1998) (citing cases).

One of TILA's remedial measures is a right to rescind certain "consumer credit transaction[s]." 15 U.S.C. § 1635(a). Under the Act, a borrower "shall have the right to rescind the transaction until midnight of the third business day" after the transaction is completed or the necessary disclosures are furnished, whichever is later. *Id.* "This regime grants borrowers an unconditional right to rescind for three days, after which they may rescind only if the lender failed to satisfy the Act's disclosure requirements." *Jesinoski v. Countrywide Home Loans, Inc.*, 135 S. Ct. 790, 792 (2015). But even if the lender fails to give proper disclosures, the "right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first." 15 U.S.C. § 1635(f).

TILA also explains how rescission is to be effected. To exercise the right of rescission, the borrower need only "notify[] the creditor, in accordance with regulations of the [Consumer Financial Protection] Bureau, of his intention to do so." *Id.* § 1635(a). The creditor then has 20 days to "return to the [borrower] any money or property given as earnest money, downpayment, or otherwise, and . . . take any action necessary or appropriate to reflect the termination of any security interest created under the transaction." *Id.* § 1635(b). The borrower must then tender to the creditor the property or, in certain circumstances, its reasonable value. *Id.* "If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it." *Id.* These procedures do not apply, however, "when otherwise ordered by a court." *Id.*

1.      Waiver and Constitutionality

The Segrists first argue that, because Defendants did not file an action within 20 days of receiving the notices of rescission, they waived the right to challenge the rescission by filing a motion to dismiss. According to Plaintiffs, allowing Defendants to file a motion to dismiss constitutes an impermissible and unconstitutional addition to the text of the statute.

In support of a 20-day deadline, the Segrists cite only their own complaint. But whether TILA requires Defendants to file a suit within 20 days upon pain of waiver is a legal conclusion, and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Plaintiffs apparently draw this conclusion from the Act's provision that "[w]ithin 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction." 15 U.S.C. § 1635(b). To be sure, this provision entails obligations for lenders; if a lender fails to respond promptly to a notice of rescission and the borrower subsequently files suit, the lender may face civil penalties. *See id.* § 1640(a). But nothing in the language or logic of this provision requires a lender to file an immediate lawsuit to avoid waiving all defenses.

The Act, moreover, contemplates the use of standard legal processes. TILA is enforced via suits filed in federal district courts. *Id.* § 1640(a), (e). Congress did not provide for any special procedures to govern TILA suits, so we look to the Federal Rules of Civil Procedure, which "govern the procedure in all civil actions and proceedings in the United States district courts, except as stated in Rule 81." Fed. R. Civ. P. 1. TILA is not listed among Rule 81's exceptions, so the Federal Rules—among them, Rule 12(b)—necessarily govern TILA suits. For this reason,

we have reviewed arguments raised by creditors who urge dismissal of rescission suits. *See, e.g.*, *Begala*, 163 F.3d at 950; *Wachtel v. West*, 476 F.2d 1062, 1063 (6th Cir. 1973); *see also Jesinoski*, 135 S. Ct. at 791 (reviewing a grant of judgment on the pleadings). We may do so here as well.

Because Defendants did not waive their arguments by failing to file suit and because they may contest rescission by filing a motion to dismiss, we turn to the merits.

2.        Scope of the Right to Rescind

We first ask whether, under TILA, the Segrists were entitled to exercise a right of rescission. Our analysis assumes as true the Segrists' allegation that they never received the disclosures required under TILA.

TILA limits the scope of the right to rescind to "any consumer credit transaction . . . in which a security interest . . . is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended." 15 U.S.C. § 1635(a). A later subsection exempts certain types of loans, including "a residential mortgage transaction" and a "transaction which constitutes a refinancing or consolidation (with no new advances) of the principal balance then due and any accrued and unpaid finance charges of an existing extension of credit by the same creditor secured by an interest in the same property." *Id.* § 1635(e)(1), (2). We must therefore determine whether either of the Segrists' two transactions—the original mortgage loan or its subsequent modification—gives rise to a right to rescind under the Act.

The text of the statutory exemptions makes clear that the original loan does not. As the district court concluded, the three-year statute of limitations for that transaction has long since run, and even if it had not, the parties do not dispute that the 2003 transaction was an exempt "residential mortgage transaction" within the meaning of the Act. *See id.* § 1602(x). On appeal,

the Segrists concede this point, explaining that they now seek to rescind only the Loan Modification Agreement.

We therefore turn to the Loan Modification Agreement and the scope of the refinancing exception.[1] Under TILA, borrowers do not have a right to rescind "refinancing" transactions made with "the same creditor secured by an interest in the same property." *Id.* § 1635(e)(2). The statutory exemption, however, does not speak directly to the situation at hand, where the Segrists entered into a Loan Modification Agreement with a creditor (Bank of America) who was not the same creditor that originally extended the mortgage loan (Full Spectrum Lending). We must therefore determine whether the Segrists have a right to rescind this modification.

The Segrists argue that they have a right to rescind the Loan Modification Agreement with Bank of America because it is a refinancing transaction with a different creditor. The Act provides that there is no right to rescind a refinancing with the *same* creditor, *id.*, but does not exempt a refinancing with a *different* creditor. We must determine whether the Modification Agreement was a refinancing.

The answer to this question is informed by the regulations and interpretations published by the administering agency of TILA[2]: Regulation Z and the accompanying Official Staff Interpretations. *See* 12 C.F.R. pt. 226; *id.* Supp. I. The Supreme Court has been very clear about the weight to be given to these two sources: "[A]bsent some obvious repugnance to the statute, the Board's regulation implementing [TILA] should be accepted by the courts, as should the

---

[1] Defendants do not argue that the Loan Modification Agreement is itself an exempt "residential mortgage transaction" within the meaning of the Act, presumably because they accept that the Agreement did not "finance the acquisition or initial construction" of the Segrists' home. 15 U.S.C. § 1602(x). We therefore do not consider the applicability of this exemption to the Modification Agreement.

[2] Currently, that responsibility lies with the Consumer Financial Protection Bureau. *See* 15 U.S.C. §§ 1602(b), 1604(a). Before the creation of the Bureau, however, the Federal Reserve Board was charged with administering TILA. *See Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 559–60 (1980).

Board's interpretation of its own regulation." *Anderson Bros. Ford v. Valencia*, 452 U.S. 205, 219 (1981); *see also Chase Bank USA, N.A. v. McCoy*, 562 U.S. 195, 211 (2011) (acknowledging that "the Official Staff Commentary promulgated by the Board as an interpretation of Regulation Z may warrant deference as a general matter" but, in that case, merely replicated ambiguity in the regulatory text); *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565 (1980) ("Unless demonstrably irrational, Federal Reserve Board staff opinions construing the Act or Regulation should be dispositive . . . .").

> Regulation Z provides the definition of refinancing that is missing from the Act:

> (a) Refinancings. A refinancing occurs when an existing obligation that was subject to this subpart is satisfied and replaced by a new obligation undertaken by the same consumer. A refinancing is a new transaction requiring new disclosures to the consumer. . . . The following shall not be treated as a refinancing: . . .

>> (2) A reduction in the annual percentage rate with a corresponding change in the payment schedule.

>> . . .

>> (4) A change in the payment schedule or a change in collateral requirements as a result of the consumer's default or delinquency, unless the rate is increased, or the new amount financed exceeds the unpaid balance plus earned finance charge and premiums for continuation of insurance . . . .

12 C.F.R. § 226.20. The Official Staff Interpretation in turn clarifies that "[a] refinancing is a new transaction requiring a complete new set of disclosures. Whether a refinancing has occurred is determined by reference to whether the original obligation has been satisfied or extinguished and replaced by a new obligation, based on the parties' contract and applicable law." 12 C.F.R. pt. 226, Supp. I, p. 681.

So, if the Segrists' Loan Modification Agreement with Bank of America "satisfied and replaced" the 2003 mortgage loan, it was a refinancing. 12 C.F.R. § 226.20(a). If, however, the

Modification Agreement did not "satisf[y] and replace[]" the Segrists' initial note—for example, because the Modification Agreement was "[a] reduction in the annual percentage rate" or "[a] change in the payment schedule . . . as a result of the consumer's default or delinquency" that did not result in increased rates—then it was not a refinancing. 12 C.F.R. § 226.20(a)(2), (4).

Nothing in the Loan Modification Agreement suggests that it satisfies and replaces the original mortgage agreement. The first paragraph of the Modification Agreement provides that it "amends and supplements" the original note and deed of trust. A subsequent section states that "[a]ll terms and provisions of the [2003] Loan Documents, except as expressly modified by this Agreement, remain in full force and effect. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents." This express disavowal of any satisfaction of the original terms strongly supports the conclusion that the Modification Agreement is not a refinancing.

Looking beyond the boilerplate to the substance of the Agreement, we find nothing to disturb this conclusion. The substance of the Agreement appears to fit within the regulatory exception for "[a] change in the payment schedule . . . as a result of the consumer's default or delinquency, unless the rate is increased, or the new amount financed exceeds the unpaid balance plus earned finance charge and premiums for continuation of insurance." 12 C.F.R. § 226.20(a)(4). In the Agreement, the Segrists acknowledged that they were "experiencing a financial hardship, and as a result, . . . [they were] in default under the Loan Documents or [their] default [was] imminent." The Modification Agreement's new interest rate, 6.125%, was lower than the Segrists' original rate, which could vary between 8.5 and 15.5%. No new down payment was required. The modified balance equaled the unpaid balance of the original loan plus certain charges, less $67,000 that was permanently forgiven. There is no evidence showing that this

calculation resulted in a figure that impermissibly exceeded "the unpaid balance plus earned finance charge and premiums for continuation of insurance." *See id.* For all of these reasons, we conclude that the Loan Modification Agreement was not a refinancing.

The Segrists offer two counterarguments. First, they argue that whether the Modification Agreement replaced or merely supplemented the original mortgage loan "is a question of fact which is not properly resolved on a motion to dismiss." This argument ignores the well-established principle of Tennessee law that, "[i]f the contract language is unambiguous, then the parties' intent is determined from the four corners of the contract." *Ray Bell Constr. Co. v. State*, 356 S.W.3d 384, 387 (Tenn. 2011). Plaintiffs have not identified any ambiguous language in the Modification Agreement, and we see none. Second, the Segrists argue that we must credit the allegation in the complaint that the Modification Agreement "is a form of refinance of a loan." But whether the Modification Agreement is a refinancing is a legal—not factual—conclusion, and we need not accept the Segrists' allegation on this point as true. *See Iqbal*, 556 U.S. at 678.

In this case, the Segrists' Loan Modification Agreement was not a refinancing, and they have not alleged any circumstances—such as putting new money down, taking on a higher interest rate, or increasing the balance owed—that would materially change the nature of the encumbrance on their home. They therefore did not have a right to rescind, and the district court correctly dismissed their claim.

## B. Authority to Act

The Segrists' second claim seeks declarations that the transfers of interest in the property were unlawful, such that Defendants lacked the legal authority to (in the case of Bank of America) enter into the Loan Modification and (in the case of BNY) foreclose on their home.

1.      Bank of America's Authority to Modify

We first consider Bank of America's authority to enter into the Loan Modification Agreement. The parties all agree that Bank of America represented itself to the Segrists as their loan servicer. Loan servicers commonly enter into Modification Agreements like this one; indeed, federal law requires servicers to entertain modification requests in certain circumstances. *See Brimm v. Wells Fargo Bank, N.A.*, 688 F. App'x 329, 330 (6th Cir. 2017); 12 C.F.R. § 1024.41. The Segrists allege that Bank of America sometimes also represented itself as the owner of the loan; for example, Bank of America called itself the "Lender" in the Loan Modification Agreement. But even assuming that Bank of America did on occasion misidentify its interest in the loan, the owner of a loan would also have authority to enter into a Modification Agreement.

The Segrists also argue that Bank of America has failed to provide sufficient evidence of its status as the servicer, but this argument misallocates the burden—which, at this stage, rests on their shoulders. *See Dauenhauer v. Bank of N.Y. Mellon*, 562 F. App'x 473, 481 (6th Cir. 2014) ("Borrowers bore the burden to make factual allegations sufficient to support their claim that BNYM was not a holder in due course. Because Borrowers failed to do so, the district court properly rejected their contention."). The district court correctly dismissed this claim.

2.      BNY's Authority to Foreclose

We turn next to the claim that BNY did not have a sufficient interest in the property to foreclose. We have summarized Tennessee law with regard to assignment of promissory notes as follows:

> [U]nder Tennessee law, a promissory note is a negotiable instrument, unless it contains a conspicuous statement that it is not negotiable. Tenn. Code. Ann. § 47-3-104. A note can be sold or assigned to another party who then receives the right to enforce the instrument. *Id*. §§ 47-3-201, 203, 301, 302. An assignment of a note is enforceable regardless of whether it is recorded. *W.C. Early Co. v. Williams*, 186 S.W. 102, 103 (Tenn. 1916). An instrument may be enforced by, among others,

the "holder" of the instrument. Tenn. Code Ann. § 47-3-301. When an instrument carries a blank endorsement, it becomes payable to the "bearer," meaning whoever possesses the note. Tenn. Code Ann. § 47-3-205.

*Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 749 (6th Cir. 2014). The Segrists' original promissory note provides that "the Lender may transfer this Note." The note is endorsed in blank, and the Segrists do not dispute that BNY currently possesses it. The accompanying deed of trust was assigned to BNY in 2011.

The Segrists argue that the note was not validly assigned to BNY. They allege that they sent BNY a qualified written request[3] in 2015 and, in response, two BNY employees "affirmatively represented to Plaintiffs that Defendant BNY did not own the loan." BNY foreclosed on the loan later that same year. Even if BNY employees stated that the bank did not own the loan, BNY's unrebutted evidence demonstrates that it did own the loan at the time of the foreclosure because it possessed the promissory note. *See Jones v. Select Portfolio Servicing, Inc.*, 672 F. App'x 526, 532 (6th Cir. 2016) (concluding that assorted challenges to the assignment of a deed of trust were irrelevant under Tennessee law because the holder of the note was entitled to enforce the instrument).

We therefore affirm the district court's dismissal of the Segrists' second claim.[4]

---

[3] Failure to provide truthful and accurate information in response to a qualified written request may give rise to a claim under the Real Estate Settlement Procedures Act. *See* 12 U.S.C. § 2605(f). The district court held that the "two isolated references" to the Real Estate Settlement Procedures Act in the complaint did not suffice to state a claim under that law. The Segrists have not challenged that dismissal, and we do not hereby revive that claim.

[4] Defendants also argue that the Segrists lack standing to challenge the assignment of the loan. Standing to challenge the assignment of a loan "is a common-law analogue of statutory standing, wholly unrelated to Article III standing. It is entirely a creature of state contract law and is assessed in conjunction with the merits of the claim, not as a threshold issue." *Slorp v. Lerner, Sampson & Rothfuss*, 587 F. App'x 249, 254 (6th Cir. 2014). Because we resolve this claim on other grounds, we need not reach this "standing" issue.

## C. Fraudulent Inducement

The Segrists' third and final claim alleges that they were fraudulently induced to enter into the Loan Modification Agreement.

Federal Rule of Civil Procedure 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." "To satisfy Rule 9(b), a complaint of fraud, at a minimum, must allege the time, place, and content of the alleged misrepresentation on which [the plaintiff] relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *United States ex rel. Prather v. Brookdale Senior Living Cmtys., Inc.*, 892 F.3d 822, 830 (6th Cir. 2018) (alteration in original) (citation and internal quotation marks omitted).

The fraud that the Segrists allege is Bank of America's representation that it had a sufficient legal interest in either their promissory note or the deed of trust to empower it to enter into the Loan Modification Agreement. But the Segrists offer no factual allegations to support this conclusion. They have not made any allegations about the time or place of the fraudulent statements, as required by Rule 9(b). *See id.* And, although we draw all reasonable inferences in the Segrists' favor, *see Luis*, 833 F.3d at 626, they do not describe how they were injured by entering into a Loan Modification Agreement that appears on its face to lower their interest rate and forgive a substantial portion of the balance owed. The district court was therefore correct to dismiss the fraudulent inducement claim.

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's dismissal of all counts.