*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

KATHRYN MARY MUNSHAW,

        Defendant-Appellant.

UNPUBLISHED
February 12, 2025
10:22 AM

No. 366399
Livingston Circuit Court
LC No. 2022-027362-FC

Before: BOONSTRA, P.J., and M. J. KELLY and MALDONADO, JJ.

PER CURIAM.

Defendant appeals by right her jury-trial convictions of two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a); MCL 750.520b(2)(b); two counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a); MCL 750.520c(2)(b); four counts of aggravated child sexually abusive activity, MCL 750.145c(2)(b); one count of child sexually abusive activity, MCL 750.145c(2)(a); and five counts of using a computer to commit a crime, MCL 752.796(1); MCL 752.797(3)(f). The trial court sentenced defendant to prison terms of 25 to 50 years for each CSC-I conviction; 7 to 15 years for each CSC-II conviction; 7 to 25 years for aggravated child sexually abusive activity conviction (two of the terms to be served consecutively to the CSC-I sentences); 7 to 20 years for the child sexually abusive activity conviction; and 7 to 20 years for each conviction of using a computer to commit a crime. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Defendant and her husband (Wesley Munshaw) have three young children. In February 2022, Wesley discovered that defendant was having an affair with Jerome Stevens. Wesley logged into defendant's Snapchat[1] account to find out more information about the affair. Wesley

---

[1] A forensic analyst for the Michigan State Police testified at trial that "Snapchat is a picture and text messaging application that phones have. It is used to send pictures, it can be used to send pictures and short form videos. It also can be used as a texting feature . . . ."

discovered numerous sexually explicit photographs of their children, including pictures of defendant performing sex acts on them, saved on her Snapchat account. She had shared many of these pictures with Stevens.[2] Wesley contacted police and defendant was arrested and charged as described.

Before trial, a *Daubert*[3] hearing was held regarding the proffered testimony of two potential defense expert witnesses, Dr. James Fugate and Dr. John Neuman. The prosecution filed a motion in limine to exclude their testimony, as well as to exclude the introduction of the results of a Minnesota Multiphasic Personality Inventory (MMPI) assessment of defendant as interpreted by Dr. Fugate. Dr. Fugate testified that defendant had a passive and submissive personality and that she was therefore uniquely susceptible to manipulation and being "talked into" taking the explicit pictures of her and her children by Stevens. Defendant sought to use this testimony to support her argument that she was incapable of forming the necessary intent to commit the charged offenses, and that she lacked a "sexual purpose" when she sent the explicit pictures to Stevens. Dr. Fugate also testified that he did not have data to diagnose defendant as a pedophile, and opined that defendant did not have the personality characteristics associated with pedophiles.

The trial court granted the prosecution's motion in limine, finding that Dr. Fugate's testimony regarding whether defendant possessed characteristics common in pedophiles was the type of testimony prohibited by this Court's holding in *People v Dobek*, 274 Mich App 58, 94-95; 732 NW2d 546 (2007). The trial court also found that Dr. Fugate's testimony would not be helpful to the jury in deciding a fact at issue, that his personality profile of defendant was not sufficiently reliable because it was not supported by sufficient scientific data, and that any probative value his testimony, including his MMPI interpretation, had was substantially outweighed by the risk of unfair prejudice to the prosecution and of misleading or confusing the jury. The trial court also concluded that Dr. Fugate's testimony was further precluded by our Supreme Court's holding in *People v Carpenter*, 464 Mich 223, 241; 627 NW2d 276 (2001), because it would be introduced to support a defense of diminished capacity. After defense counsel informed the trial court that the testimony of Dr. Neuman would be substantially similar to that of Dr. Fugate, the trial court held that its ruling on the admission of Dr. Neuman's testimony would be the same as its ruling on Dr. Fugate's.

At trial, the prosecution introduced photographs and videos initially discovered by Wesley on defendant's Snapchat account. Michigan State Police Detective Sergeant Kailee Schuett testified that after Wesley gave the police his phone and his tablet, she obtained a search warrant for defendant's home and Snapchat account and received information, including some of the explicit photos, from defendant's Snapchat account. Detective Schuett also discovered sexually explicit pictures on a cellular phone belonging to defendant that had been seized during the search of defendant's home.

Defendant was convicted as described. At sentencing, defense counsel argued that the trial court was not required to impose a mandatory minimum sentence of 25 years for defendant's CSC-

---

[2] In April 2024, Stevens was convicted of the same crimes as defendant in a separate jury trial.

[3] See *Daubert v Merrell Dow Pharm, Inc*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993).

I convictions. The trial court sentenced defendant as described. After sentencing, defendant moved the trial court for a new trial or evidentiary hearing, arguing that the trial court had erred by admitting evidence obtained by Wesley from defendant's Snapchat account, because Wesley had violated Michigan's eavesdropping statutes and federal wiretapping statutes. The trial court denied defendant's motion. This appeal followed.

## II. ADMISSION OF EVIDENCE

Defendant first argues that it was clear error for the trial court to admit the photographs found in her Snapchat account because they were obtained as a result of her husband's violation of Michigan and federal eavesdropping and wiretapping statutes. Defendant alternatively argues that her trial counsel was ineffective because he failed to move to suppress the evidence on this basis, and that the trial court erred by denying her motion for a new trial. We disagree.

"This Court reviews for an abuse of discretion a trial court's decision on a motion for a new trial." *People v Hammerlund*, 337 Mich App 598, 615; 977 NW2d 148 (2021). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *Id*. (quotation marks and citation omitted). A trial court's decision on a close evidentiary question generally is not an abuse of discretion. *People v Hawkins*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 365076); slip op at 2.

We review issues of statutory construction de novo. *People v Oslund*, ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket No. 165544); slip op at 5.

> [T]he primary goal when interpreting a statute is to ascertain and facilitate the intent of the Legislature. Under the rules of statutory construction, the Legislature is presumed to have intended the meaning it plainly expressed. Where the language of a statute is clear, there is no need for interpretation and courts must apply the statute as written. [*People v Godfrey*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 361770); slip op at 2 (quotation marks and citation omitted).]

This Court "interpret[s] defined terms in accordance with their statutory definitions . . . ." *People v Otto*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 362161); slip op at 7 (quotation marks and citation omitted).

Because defendant did not argue in the trial court that the Snapchat photographs were obtained in violation of eavesdropping or wiretapping statutes, we review this unpreserved issue for plain error affecting substantial rights. See *People v Anderson*, 341 Mich App 272, 279-280; 989 NW2d 832 (2022), citing *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

" 'The question whether trial counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law.' " *In re Londowski*, 340 Mich App 495, 516; 986 NW2d 659 (2022), quoting *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). Clear error exists when the reviewing court "is definitely and firmly convinced that the trial court made a mistake." *People v Shaw*, 315 Mich App 668, 672; 892 NW2d 15 (2016).

## A. MICHIGAN EAVESDROPPING STATUTES

Defendant argues that Wesley violated Michigan's eavesdropping statutes, MCL 750.539a *et seq*. We disagree. MCL 750.539c provides in relevant part:

> Any person who is present or who is not present during a private conversation and who wilfully uses any device to eavesdrop upon the conversation without the consent of all parties thereto, or who knowingly aids, employs or procures another person to do the same in violation of this section, is guilty of a felony . . . .

Under MCL 750.539a(2), " '[e]avesdrop' or 'eavesdropping' means to overhear, record, amplify or transmit any part of the private discourse of others without the permission of all persons engaged in the discourse." The term "private conversation under MCL 750.539c means "a conversation that a person reasonably expects to be free from casual or hostile intrusion or surveillance." *People v Stone*, 463 Mich 558, 563; 621 NW2d 702 (2001). MCL 750.539e provides in relevant part, "Any person who uses or divulges any information which he knows or reasonably should know was obtained in violation of sections 539b, 539c or 539d is guilty of a felony . . . ."

Defendant argues that Wesley violated the Michigan eavesdropping statute by "transmitting" the Snapchat messages containing the explicit pictures when he logged into defendant's Snapchat account without her consent. We disagree. The acts that constitute "eavesdropping" under MCL 750.539a(2) and MCL 750.539c are overhearing, recording, amplifying or transmitting private discourse. In order for overhearing, recording, amplifying, or transmitting to meet the definition of "eavesdropping," it must be done "without the consent of persons *engaged* in the discourse." MCL 750.539a(2) (emphasis added). In this case, there is no dispute that the photographs were already saved to defendant's Snapchat account when her husband found them, long after any conversation took place between defendant and Stevens upon which one could have "eavesdropped.". Moreover, MCL 750.539e does not apply to Wesley's provision of photographs and messages to the police. MCL 750.539e requires that the divulger must have known, or reasonably should have known, that the information divulged "was obtained in violation of sections 539b, 539c or 539d." As noted, Wesley did not obtain the information in violation of MCL 750.539c.[4] The trial court correctly interpreted Michigan's eavesdropping statutes and held that they did not apply to Wesley's conduct.

Further, even assuming that the eavesdropping statutes were violated as defendant claims, the alleged violation would not require the application of the exclusionary rule to this criminal proceeding against defendant. A mere statutory violation, without a concurrent constitutional violation, does not require the application of the exclusionary rule. See *People v Lyon (On Remand)*, 227 Mich App 599, 611; 577 NW2d 124 (1998). Our Supreme Court has held that the violation of MCL 750.539c by a private citizen who is not acting as an agent of the police, who then divulges the information to the police does not require the exclusion of that evidence. See

---

[4] MCL 750.539b concerns trespassing on property owned by another for the purposes of surveillance, and MCL 750539d concerns the placement and use of recording devices for the purposes of eavesdropping; neither is applicable to this case.

*People v Warner*, 401 Mich 186, 209; 258 NW2d 385 (1977); see also *People v Livingston*, 64 Mich App 247, 255; 236 NW2d 63 (1975). Even if Wesley had violated Michigan's eavesdropping statutes, the consequences for such a violation would be criminal or civil liability for Wesley as outlined in the statutes rather than suppression of the evidence in a criminal case against defendant. The trial court correctly held that defendant was not entitled to suppression of the challenged evidence premised on a violation of Michigan's eavesdropping statutes.

## B. FEDERAL WIRETAPPING STATUTES

Defendant also argues that Wesley's actions violated federal wiretapping statutes. We disagree. 18 USC 2511(1)(a) provides:

> Except as otherwise specifically provided in this chapter any person who— intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication . . . shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5).

"Intercept" under this act is "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 USC 2510(4). "Wire communication" is

> any aural transfer made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception (including the use of such connection in a switching station) furnished or operated by any person engaged in providing or operating such facilities for the transmission of interstate or foreign communications or communications affecting interstate or foreign commerce[.] [18 USC 2510(1).]

Aural transfer means "a transfer containing the human voice at any point between and including the point of origin and the point of reception." 18 USC 2510(18). "Electronic communication" is

> any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce, but does not include— (A) any wire or oral communication; (B) any communication made through a tone-only paging device; (C) any communication from a tracking device (as defined in section 3117 of this title ); or (D) electronic funds transfer information stored by a financial institution in a communications system used for the electronic storage and transfer of funds . . . . [18 USC 2510(12).]

"Electronic storage" is

> any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and (B) any storage of such

communication by an electronic communication service for purposes of backup protection of such communication . . . . [18 USC 2510(17)(A).]

Defendant argues that Wesley "intercepted" her electronic communication by logging into her Snapchat account. We disagree. The United States Court of Appeals for the Sixth Circuit has stated in *Luis v Zang*, 833 F3d 619, 627-628 (CA 6, 2016):[5]

> The term "intercept," as noted above, applies only to electronic communications, not to electronic storage. See *id*. § 2510(4) . . . . [T]he term intercept applies solely to the transfer of electronic signals. The term does not apply to the acquisition of electronic signals that are no longer being transferred.
>
> This gives rise to the contemporaneity requirement. *Once the transmission of the communication has ended, the communication ceases to be a communication at all. The former communication instead becomes part of "electronic storage."* And *at that point a person cannot "'intercept" the former communication* because the term intercept, as noted above, does not apply to electronic storage. *Interception must thus occur contemporaneously with the transmission of the communication*; it must, in other words, catch the communication "in flight" before the communication comes to rest and ceases to be a communication. [Emphasis added; see also *Boudreau v Lassier*, 901 F3d 65, 77 (CA 1, 2018) (citing *Luis*, 833 F3d at 628, and stating that all other circuits have taken the above-quoted position).]

We find the Sixth Circuit's interpretation persuasive. Wesley did not "intercept" any communication within the meaning of 18 USC 2511(1)(a) and 18 USC 2510(4). The Snapchat messages, by the time Wesley accessed them, were saved to defendant's Snapchat account, and were no longer subject to interception because the communication had ended and had become a part of " 'electronic storage' " under 18 USC 2510(17). See *Luis*, 833 F3d at 627.

The trial court did not err, clearly or otherwise, by admitting the challenged evidence; therefore, the trial court did not abuse its discretion by denying defendant's motion for a new trial on that basis. *Hammerlund*, 337 Mich App at 615. And defense counsel was not ineffective for failing to make a futile objection or file a meritless motion to suppress. *People v Leffew*, 508 Mich 625, 638; 975 NW2d 896 (2022).

### III. EXCLUSION OF EXPERT TESTIMONY

Defendant also argues that the trial court's exclusion of Dr. Fugate's and Dr. Neuman's expert testimony was erroneous under MRE 702, because their testimony could have helped the jury determine whether defendant had the requisite intent to convict her of the offenses charged.

---

[5] Regarding issues of federal law, including the interpretation of federal statutes, this Court is bound by decisions of the United States Supreme Court, but not by decisions of any lower federal courts; however, those decisions may be persuasive. *Dobronski v Transamerica Life Ins Co*, 347 Mich App 92, 102; 13 NW2d 92 (2023).

Defendant also argues that this exclusion violated her constitutional right to present a defense. We disagree.

We review "a trial court's decision on a motion in limine for an abuse of discretion." *People v Hawkins*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 365076); slip op at 2. "Interpretation of the rules of evidence is an issue of law that this Court reviews de novo." *Id*. (quotation marks and citation omitted).

This Court generally reviews de novo whether a defendant was denied the constitutional right to present a defense. *Id*. (citation omitted). However, because defendant did not preserve this argument by raising it in the trial court, we review it for plain error affecting substantial rights. See *People v Charboneau*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 364596); slip op at 6 n 6; *Anderson*, 341 Mich App at 279, quoting *Carines*, 460 Mich at 763.

MRE 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

MRE 403 provides:

The court may exclude relevant evidence *if its probative value is substantially outweighed by a danger of* one or more of the following: unfair prejudice, *confusing the issues*, *misleading the jury*, undue delay, wasting time, or needlessly presenting cumulative evidence. [Emphasis added.]

A defendant's right to present a defense includes "a right to examine the witnesses against [them], to *offer testimony*, and to be represented by counsel." *People v McGee*, 258 Mich App 683, 699; 672 NW2d 191 (2003) (quotation marks and citation omitted; emphasis added).

We agree with the trial court's conclusion that admission of the proposed testimony would have violated *People v Carpenter*, 464 Mich 223, 241; 627 NW2d 276 (2001). In *Carpenter*, our Supreme Court held that Michigan law does not permit the admission of "evidence of a defendant's lack of mental capacity short of legal insanity to avoid or reduce criminal responsibility by negating specific intent." *Id*. Moreover, a defendant is not deprived of the constitutional right to present a defense by application of *Carpenter*, because he retains "the right to present lay

testimony," such as his own testimony, "that he did not have the requisite intent to commit the charged crimes." *People v Tierney*, 266 Mich App 687, 713-714; 703 NW2d 204 (2005).

Additionally, the trial court properly concluded that the relevance of the proposed testimony, if any, was substantially outweighed by the danger of confusing the issues or misleading the jury. MRE 403. "In essence, evidence is unfairly prejudicial when there exists a danger that *marginally probative* evidence might be given undue weight by the jury." *People v Dixon-Bey*, 321 Mich App 490, 513; 909 NW2d 458 (2017) (emphasis added). The testimony was offered to prove that defendant had a submissive and passive personality, and that defendant is not a pedophile. However, proof of defendant's passive or submissive personality would be of no "consequence in determining the action." MRE 401(b). Nor is a defendant required to fit the precise medical definition of a pedophile in order to commit sex offenses against children. And while the proposed evidence had no bearing on whether defendant had the requisite intent to commit the offenses charged, the risk of the evidence being given undue weight by the jury was very high. As this Court noted in *Dobek*, the expert in that case conceded that "sex-offender profiles developed from the testing are useful and can indicate a predisposition, but they cannot establish with any degree of certainty that a person is or is not a sex offender." *Dobek*, 274 Mich App at 95. Moreover, as this Court also noted, the testimony "would more likely [have] confuse[d] the jury and distract[ed] it from focusing on the pertinent evidence . . . ." *Id*. at 96-97. Similarly, in this case, the proffered evidence would likely cause the jury to confuse the issue of whether defendant was a pedophile or had the personality traits of a pedophile with the pertinent issue of whether she intentionally engaged in the conduct depicted in the explicit pictures and, with respect to the CSC-II counts, did so for a "sexual purpose" or "sexual arousal or gratification." Accordingly, as was the case in *Dobek*, "any minimal probative value would be substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *Dobek*, 274 Mich App at 97.

For similar reasons, we reject defendant's unpreserved argument that the exclusion of the proposed testimony violated her constitutional right to present a defense. A defendant's right to offer witness testimony "*is not absolute*: the *accused must still comply with established rules of procedure and evidence* designed to assure both *fairness* and *reliability* in the ascertainment of guilt and innocence." *People v Zitka*, 335 Mich App 324, 333; 966 NW2d 786 (2020) (quotation marks and citation omitted; emphasis added). "[T]he right to present a defense extends only to *relevant* and *admissible* evidence." *Id*. (quotation marks and citation omitted; emphasis added). "Such rules do not abridge an accused's right to present a defense so long as they are not arbitrary or disproportionate to the purposes they are designed to serve." *United States v Scheffer*, 523 US 303, 308; 118 S Ct 1261; 140 L Ed 2d 413 (1998) (quotation marks and citation omitted). The trial court's appropriate application of the rules of evidence in this case did not compromise defendant's right to present a defense.

## IV. MANDATORY MINIMUM SENTENCE

Finally, defendant argues that the trial court erroneously interpreted MCL 750.520b(2)(b) as requiring it to impose a minimum sentence of 25 years' imprisonment for her CSC-I convictions. Although defendant argues that precedential opinions deciding this exact issue were wrongly decided, we are nonetheless bound by them, and we accordingly conclude that the 25-year sentence provided for in MCL 750.520b(2)(b) is a mandatory minimum sentence. See *People v Beck*, 510

Mich 1, 27; 987 NW2d 1 (2023) ("A CSC-I offense committed by an individual 17 years old or older against an individual under the age of 13 carries a 25-year mandatory minimum sentence.") *People v Roy*, 346 Mich App 244, 250; 12 NW3d 183 (2023) ("MCL 750.520b(2)(b)'s 25-year provision imposes a mandatory minimum.").

Affirmed.

/s/ Mark T. Boonstra
/s/ Michael J. Kelly
/s/ Allie Greenleaf Maldonado